**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **MITZI SMITH PICKLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No:** |
| **v.** | ) | |
| | ) | |
| **UNITED SALT SALTVILLE, LLC,** | ) | **JURY TRIAL DEMANDED** |
| **Serve: C T Corporation System** | ) | |
| **4701 Cox Road Ste 285** | ) | |
| **Glen Allen, VA  23060-6808** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **UNITED SALT CORPORATION,** | ) | |
| **Serve: C T Corporation System** | ) | |
| **4701 Cox Road Ste 285** | ) | |
| **Glen Allen, VA  23060-6808** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **TEXAS UNITED MANAGEMENT** | ) | |
| **CORPORATION,** | ) | |
| **Serve: Robert Kayl** | ) | |
| **4800 San Felipe Street** | ) | |
| **Houston, Texas 77056** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **USC SALTVILLE BRINE, LLC,** | ) | |
| **Serve: C T Corporation System** | ) | |
| **4701 Cox Road Ste 285** | ) | |
| **Glen Allen, VA  23060-6808** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

Plaintiff Mitzi Smith Pickle, by counsel, comes before this Court to file this Complaint

against Defendants United Salt Saltville, LLC, United Salt Corporation, Texas United

Management Corporation, and USC Saltville Brine, LLC, formerly known as Texas Brine Company Saltville, LLC, hereinafter, collectively, "United Salt," and as grounds therefore states as follows:

## PARTIES

1.      An expensive and damaging 2012 sinkhole incident in Bayou, Louisiana resulted in Defendants adopting a new, complex corporate structure with additional LLCs. Defendants have maintained operations at the same principal office address, 4800 San Felipe Street, Houston, Texas 77056, though, both prior and subsequent to the corporate reorganization.

2.      United Salt Saltville, LLC is a Texas limited liability company, registered with Virginia's State Corporation Commission, doing business in the Commonwealth of Virginia and elsewhere. United Salt Saltville, LLC is the entity set forth on Ms. Pickle's W-2.

3.      USC Saltville Brine, LLC, formerly known as Texas Brine Company Saltville, LLC, is a Texas limited liability company, registered with Virginia's State Corporation Commission, doing business in the Commonwealth of Virginia and elsewhere. USC Saltville Brine, LLC employees work at the same physical location as United Salt Saltville, LLC employees, separated only by a fence. USC Saltville Brine, LLC supplies brine to United Salt Saltville, LLC, and there is frequent interaction between the employees and the facilities operate as an integrated workforce.

4.      United Salt Corporation is a Texas stock corporation, registered with Virginia's State Corporation Commission, doing business in the Commonwealth of Virginia and elsewhere. United Salt Corporation is the corporate office for its four primary distribution locations in the United States: United Salt Baytown, LLC (Baytown, TX), United Salt Saltville,

LLC (Saltville, VA), United Salt Carlsbad, LLC (Carlsbad, NM), and United Salt Hockley, LLC (Hockley, TX). Individuals in Ms. Pickle's supervisory chain of command are employed with United Salt Corporation.

5.     Texas United Management Corporation, which is also identified by the acronym TUM, is a privately owned Texas corporation. TUM is the corporate headquarters office for its various subsidiary and affiliated entities, and through itself and its various subsidiary and affiliated entities, is involved in mining, manufacturing, IT, accounting, Human Resources, legal, purchasing, EHSS (Hydroxyethyl Sulfonate Sodium Salt), food grade salt, brine producing, and storage. These related entities, upon information and belief, include at least the following entities: United Salt Corporation and its subsidiary entities — United Salt Baytown, LLC, United Salt Saltville, LLC, United Salt Carlsbad, LLC, and United Salt Hockley, LLC — Texas Brine Company, LLC and its subsidiary entities — USC Saltville Brine, LLC, United Brine Services Company, LLC, and United Brine Services Company, LLC — Pure Salt, LLC (producer of evaporated salt), and TBC-Brinadd, LLC (global provider of non-damaging Drill-In Completion and Workover Fracturing Fluid System additives). TUM employs the Human Resource employees responsible for Ms. Pickle and Ms. Pickle's supervisors.

6.     Currently and despite diligent research, Plaintiff does not know if the following entities employ anyone involved in events relevant herein: United Salt Baytown, LLC, United Salt Carlsbad, LLC, United Salt Hockley, LLC, Pure Salt, LLC, United Brine Services Company, LLC, Texas Brine Company, LLC, and TBC-Brinadd, LLC, or any other unnamed related entity of TUM. Therefore, Plaintiff has not included the same as Defendants herein. However, if there has been a misnomer with regard to the named Defendants, Plaintiff reserves the right to move to amend the Complaint to correct the misnomer.

7.     Based upon documents and other available information, as set forth *supra*, the following entities employ individuals involved in the matters relevant herein: United Salt Saltville, LLC, United Salt Corporation, Texas United Management Corporation, and USC Saltville Brine, LLC. United Salt Saltville, LLC, United Salt Corporation, USC Saltville Brine, LLC, and Texas United Management Corporation are joint employers, integrated employers, and/or apparent agents with respect to Ms. Pickle.

8.     United Salt Saltville, LLC, United Salt Corporation, Texas United Management Corporation, and USC Saltville Brine, LLC all share the principal office address of 4800 San Felipe Street, Houston, Texas 77056.

9.     Ms. Pickle is a female resident of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, as codified under Title 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), and the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq*. and the ADA Amendments Act of 2008 ("ADA"). 28 U.S.C. § 1331; 28 U.S.C. § 1343(a).

11.     This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the acts and/or omissions giving rise to Plaintiff's Virginia Code §§ 2.2-3900, *et seq.* claims arose from the same basis of operative facts and same controversies under the law. Pursuant to 28 U.S.C. § 1367(a), these claims are so related to claims involving original jurisdiction that they form part of the same case or controversy.

12.     Due to their contacts within the Commonwealth of Virginia, Defendants avail themselves to the jurisdiction of this Court.

13.     Venue is appropriate as the acts and/or omissions of Defendants from which the causes of action arise occurred in Saltville, Virginia, which is within the Western District of Virginia, Abingdon Division. *See* 28 U.S.C. § 1391(b)(2).

14.     Plaintiff timely filed a charge with the U.S. Equal Employment Opportunity Commission on November 14, 2022 (Charge No. 438-2023-00320) and received a Dismissal and Notice of Right to Sue dated June 15, 2023, which is attached hereto as Exhibit A, and files this action within 90 days of receipt of that notice. Plaintiff timely filed a complaint with the Virginia Office of Civil Rights on November 17, 2022. Plaintiff has requested and is awaiting receipt of the Notice of Right to Sue. This Complaint will be amended to add claims pursuant to the Virginia Human Rights Act upon receipt of the Notice of Right to Sue from the Virginia Office of Civil Rights.

## FACTS

15.     Mitzi Pickle began working for United Salt in Saltville, Virginia in approximately August 2007 as a Lab Technician.

16.     United Salt produces and distributes salt products for food, agriculture, chemical processing, water softening, and other products.

17.     Ms. Pickle has excelled at United Salt, and over time her job has evolved to also include the roles of Plant Sanitarian, Sr. Laboratory Tech, and Document Control.

18.     Despite performing multiple roles simultaneously for United Salt, Ms. Pickle has always been compensated as if she only performed the duties of one position.

19.     Ms. Pickle is one of only a handful of women, three to be exact, employed at the United Salt plant in Saltville, Virginia.

20.     Throughout Ms. Pickle's tenure at United Salt, United Salt has treated female

employees at the Saltville plant differently, and less favorably, than male employees.

21.     Female employees are discouraged from applying for available job openings in the Office, and great pains are taken to keep females from learning about any such job openings. The Office positions are more desirable positions because the work is 8-hour days, day shift, and no weekends. Plant positions are scheduled for a 12-hour swing shift, working 2 days on, 3 days off, 3 days on, 2 days off. Thus, Plant employees work on weekends, and their schedules fluctuate weekly.  Moreover, Plant employees work 1 month on day shift, then 1 month on night shift. Additionally, vacation days are paid in 8-hour increments, regardless of position held. Thus, when an Office employee takes a vacation day, the Office employee is paid for all 8 hours of the shift missed. However, when a Plant employee takes a vacation day, the Plant employee is only paid for 8 hours of the 12-hour shift missed.

22.     For example, United Salt female employee Brandi Hunter asked about an open Office Manager position. Ms. Hunter was told that United Salt was no longer going to have an Office Manager. Thereafter, United Salt sent United Salt male employee Preston Frye to take the necessary classes and promoted him to Office Manager. Only after Ms. Pickle filed a charge of discrimination with the Equal Employment Opportunity Commission and a complaint with the Virginia Office of Civil Rights which documented this discrimination to governmental authorities, did United Salt promote Mr. Frye to Warehouse/Shipping Manager and make Brandi Hunter the Office Manager.

23.     In early to mid-2022, Plant Manager Chris Crawford (male) refused to hire a qualified female, Ms. Snead, for an opening in the Shipping Office for the Warehouse. Bobby Blevins, then-Warehouse/Shipping Manager, wanted to hire Ms. Snead but was not permitted to do so. Mr. Blevins stated in reference to Mr. Crawford's refusal, "you know why they didn't

6

hire her," referring to Ms. Snead's gender. Logistics Coordinator Tony Knell also stated that the Shipping Office would not hire a woman for the open position. The position was ultimately filled by a man.

24.      Since at least 2020 and continuing until Ms. Pickle filed a charge of discrimination with the Equal Employment Opportunity Commission and a complaint with the Virginia Office of Civil Rights, female employees have received lower raises than male employees.

25.      Female employees at the Saltville plant are also exposed to daily offensive and discriminatory comments and behavior, including sexual harassment.

26.      Ms. Pickle witnessed and experienced gender discrimination by Plant Manager Crawford beginning when he worked as the Assistant Plant Manager under former Plant Manager Ernie Sands.

27.      Former Plant Manager Sands also participated in gender discrimination and allowed other male managers to engage in gender discrimination.

28.      For example, in a manager's meeting, Mr. Sands passed his cell phone around to show a picture of himself and Mr. Crawford both dressed like a penis and insisted that the picture be shown to Ms. Pickle.

29.      In addition, Mr. Sands and Mr. Crawford compared Ms. Pickle's buttocks to employee Brandi Hunter's buttocks, in front of them. Mr. Sands also stated to Mr. Crawford, in front of Ms. Pickle and Ms. Hunter, that children found his and his wife's dildo and a $25.00 "rubber" that they were keeping for a special occasion. Ms. Hunter told Ms. Pickle that she reported these statements to Joe Pribyl, Head of HR, but nothing was done.

30.      Mr. Crawford was promoted to Plant Manager when Mr. Sands left to work for

a sister plant on or about July 25, 2021.

31.     Since that time, the work environment at the Saltville plant has become progressively more hostile to Ms. Pickle and other women who work at the plant.

32.     For example, in late 2021, when three male managers and Ms. Pickle went to the local pharmacy for Covid-19 booster shots, Plant Manager Crawford picked up a tube of vaginal yeast cream and loudly exclaimed, "Mitzi, I think you need this," then went behind the counter and instructed the pharmacist, "Mitzi needs a double dose of penicillin." Ms. Pickle was embarrassed and humiliated as the exchange happened in the presence of town locals, pharmacy employees, and plant managers.

33.     On or about January 17, 2022, Plant Manager Crawford refused to allow Ms. Pickle to work from home, and attempted to force her to work in the office instead, even after learning that she had a fever and other Covid symptoms and her physician had removed her from work through January 23, 2022. Mr. Crawford worked diligently to compel Ms. Pickle to come to the plant, emailing the President of United Salt Corporation to enlist assistance. It was not until United Salt Corporation's HR Director, Joe Pribyl, became involved that Ms. Pickle was approved to stay home. Yet, Mr. Crawford did not compel male employees to come in to work when they were ill. Notably, when Ms. Pickle's test results came back, it was determined that Ms. Pickle was positive for Covid.

34.     In August 2022, Plant Manager Crawford incorrectly blamed Ms. Pickle for a minor mistake on an internal document, even after he learned it was not her document and the mistake could not be attributed to Ms. Pickle. Mr. Crawford thereafter disciplined Ms. Pickle anyway, for an error he knew was not hers, and sent her home for a day without pay.

35.     Ms. Pickle reported the discriminatory discipline to United Salt's Corporate

Office.

36.     Soon thereafter, in October 2022, Ms. Pickle received a raise of only 2.9%, the lowest in her department, as a result of reporting the unwarranted discriminatory and retaliatory discipline taken against her.

37.     In 2022, male office employees received raises ranging from 3.5% to 3.7%. Brandi Hunter and Angela Plunkett, female, only received a raise of 3.3%. Ms. Pickle, after reporting the discrimination and retaliation she was enduring, only received a raise of 2.9%.

38.     The sexually charged and inappropriate behavior is not limited to Plant Manager Crawford and former Plant Manager Ernie Sands.

39.     Production Manager Steven Lewis, in Ms. Pickle's presence, commented to two employees of USC Saltville Brine, LLC, Derek Snodgress and James Meek, "come on in boys, I thought she [Ms. Pickle] would have her clothes off and we would have a foursome."

40.     On another occasion, Production Manager Steven Lewis was speaking about a male employee's girlfriend; Mr. Lewis then said to Ms. Pickle, "If I had what you women have, I would sell it and make millions." Mr. Lewis then commented that the male employee's girlfriend, though, had already "given it to everybody."

41.     Production Manager Lewis also asked whether Ms. Pickle had a "boob job."

42.     Production Manager Lewis referred to Ms. Pickle as a "whore."

43.     On one occasion when Ms. Pickle was in Mr. Lewis' office, a contractor came in and Production Manager Lewis told the contractor to enjoy the scenery and pointed to Ms. Pickle, then commented that his office smelled like "ass and boots."

44.     Despite Production Manager Lewis' sexual harassment of Ms. Pickle and other women in the workplace, Mr. Lewis has recently been promoted to Assistant Plant Manager.

45.     The treatment of the women in the Saltville plant became so sexually charged and hostile that contractor Karen Olson made a complaint to her company, Labtopia, and to Tom Ellis, Technical Manager & Manager, Quality Assurance at United Salt's Corporate Office in Houston, in approximately 2020 or 2021 and has refused to come back to the Saltville plant alone. Instead, Ms. Olsen enlisted Kip Dyer from United Salt's Corporate Office in Houston, Texas to accompany her after her report.

46.     Throughout, Ms. Pickle repeatedly reported, to no avail, the inappropriate behavior, sexual harassment, gender discrimination, and hostile work environment to several managers, including then-Warehouse/Shipping Manager Bobby Blevins, the Project Manager for USC Saltville Brine, LLC, Matt Slezak, and Maintenance Manager Mick Caudill.

47.     Ms. Pickle was informed in response to her reports that the Managers would be retaliated against, as would she, and all reporters would be terminated from employment, if HR and/or Corporate learned of the reports, and that HR would not take any action to stop the harassment.

48.     Ms. Pickle reported the inappropriate behavior, sexual harassment, gender discrimination, hostile work environment, and retaliatory lower raise to Tom Ellis, Technical Manager & Manager, Quality Assurance, at United Salt's Corporate Office in Houston.

49.     Mr. Ellis advised Ms. Pickle in response that United Salt would retaliate further if she went to HR to complain. Mr. Ellis further indicated that Ms. Pickle may have to retain a lawyer.

50.     Ms. Pickle also reported the discrimination and retaliation to Karen Olson, a Labtopia consultant for Texas United Management Corporation.

51.     Several years ago, another female employee at the Saltville plant, Mary Rachel

Buchanan, wrote an anonymous letter to United Salt's Corporate Office reporting the inappropriate behavior of management and other male employees towards women at the Saltville plant.

52.     As a result of the letter, HR Director Joe Pribyl traveled to Saltville from United Salt's Corporate Office in Houston to interview plant employees, including Ms. Pickle.

53.     Thereafter, Plant Manager Sands and then Assistant Plant Manager Crawford stated in a management meeting that they were told who wrote the letter and that they knew what the employees who were interviewed had said to Joe Pribyl when interviewed.

54.     Ms. Buchanan's days as an employee at the Saltville plant were numbered, and she was soon no longer employed, being strongly encouraged to retire in retaliation for her complaints.

55.     Moreover, two employees, Johnny Pickle and Delores Frye, who retired in approximately January 2021, reported in their employment exit questionnaires, which were provided directly to HR, the sexual harassment, hostile work environment, and the glass ceiling for women at the Saltville plant. However, nothing was done in response to stop the discrimination.

56.     Likewise, employee Sean Buchanan also complained to HR following Ms. Buchanan's report and provided photographic evidence of the vulgar pictures that were being drawn on equipment in the warehouse. However, nothing was done in response to Mr. Buchanan's report to stop the harassment.

57.     Sadly, despite the voluminous reports of discrimination, harassment, and hostile work environment to United Salt, nothing has improved for female employees at the Saltville plant.

58.     Instead, after Ms. Pickle — who had never previously received even a verbal warning — reported the discrimination, Ms. Pickle became the target of an unwarranted disciplinary action and received a lower raise, thus reducing her compensation.

59.     The sexual harassment and retaliation have risen to the level that Ms. Pickle was removed from work by her physician in November of 2022 to treat PTSD and major depression resulting from the ongoing hostile work environment at the Saltville plant.

60.     After Ms. Pickle requested FMLA leave and leave as an accommodation pursuant to the ADA, Preston Frye, Office Manager, called Ms. Pickle eight (8) times in a short period, then arrived at her home, where Ms. Pickle's daughter answered, and Mr. Frye demanded that Ms. Pickle come to work.

61.     In conclusion, United Salt has participated in, and permitted, a culture of discrimination and a hostile work environment to exist against Ms. Pickle, and other women, on the basis of Ms. Pickle's gender, female, and has retaliated against Ms. Pickle, including creating and permitting a retaliatory hostile work environment, for making complaints concerning the discrimination, harassment, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* and the Virginia Human Rights Act, Virginia Code §2.2-3900, *et. seq.*

### COUNT I: TITLE VII SEX HARASSMENT/HOSTILE WORK ENVIRONMENT/GENDER DISCRIMINATION

62.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

63.     At all times material hereto, each Defendant is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(a). At all times material hereto, each

Defendant was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(b). Plaintiff, at the times relevant, was an "employee" of Defendants within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(f).

64.     Defendants had a duty to maintain a work environment free of sex discrimination and harassment.

65.     Defendants' actions and inactions created a hostile and offensive work environment to Plaintiff and other female employees that interfered with Plaintiff's work.

66.     Defendants knew or should have known of the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment.

67.     Defendants further discriminated against Plaintiff in violation of federal law in that Defendants discriminated against Plaintiff by paying her less compensation than male employees based on her gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

68.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

69.     At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

70.     The above-described acts of Defendants constitute sex harassment, hostile work environment, and discrimination, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*

## COUNT II: TITLE VII RETALIATION/RETALIATORY
## HOSTILE WORK ENVIRONMENT

71.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

72.     At all times material hereto, each Defendant is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(a). At all times material hereto, each Defendant was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(b). Plaintiff, at the times relevant, was an "employee" of Defendants within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(f).

73.     Defendants had a duty to maintain a work environment free of retaliatory harassment.

74.     Defendants' actions and inactions created a retaliatory hostile and offensive work environment, ultimately resulting in Plaintiff being constructively suspended from the workplace on medical leave.

75.     Defendants knew or should have known of the retaliatory hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment.

76.     Defendants further violated federal law when it retaliated against Plaintiff by reducing her pay, issuing her an unwarranted disciplinary action, and suspending her on the basis of her complaints of sex discrimination, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

77.     As a result of Defendants' retaliatory acts, Plaintiff has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, shame, humiliation, embarrassment, loss of enjoyment of life, and other non-pecuniary loss.

78.     Defendants acted willfully toward Plaintiff with actual malice or with reckless disregard of the protected rights of Plaintiff so as to support an award of punitive damages.

79.     The above-described acts of Defendants constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*

## COUNT III: FMLA INTERFERENCE

80.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

81.     United Salt is: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year.

82.     Ms. Pickle was removed from work by her physician on November 9, 2022, for medical leave to treat PTSD and major depression resulting from the ongoing hostile work environment at the Saltville plant.

83.     Ms. Pickle worked for over one year and worked more than 1,250 hours during the twelve-month period immediately preceding her need for FMLA leave beginning in November of 2022.

84.     After Ms. Pickle requested FMLA leave and leave as an accommodation pursuant to the ADA, Preston Frye, Office Manager, called Ms. Pickle eight (8) times in a short period, then arrived at her home, where Ms. Pickle's daughter answered, and Mr. Frye demanded that Ms. Pickle come to work.

85.     United Salt, therefore, interfered with Ms. Pickle's federally protected FMLA rights by insisting that Ms. Pickle return to work immediately after Ms. Pickle requested FMLA leave.

86.     At all times material hereto, United Salt engaged in unlawful practices with bad faith, malice, or reckless indifference to the federally protected rights of Ms. Pickle so as to support an award of liquidated damages.

87.     The above-described acts by United Salt constitute unlawful interference in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601, *et seq*.

## COUNT IV: ADA INTERFERENCE

88.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

89.     Ms. Pickle suffers from PTSD and major depression due to the severe sexual and retaliatory hostile work environment that she has encountered at United Salt, which impairs her major life activities, such as working and regularly leaving home.

90.     Ms. Pickle was removed from work by her physician in November of 2022 for medical leave to treat PTSD and major depression resulting from the ongoing hostile work environment at the Saltville plant.

91.     After Ms. Pickle requested FMLA leave and leave as an accommodation pursuant to the ADA, Preston Frye, Office Manager, called Ms. Pickle eight (8) times in a short period, then arrived at her home, where Ms. Pickle's daughter answered, and Mr. Frye demanded that Ms. Pickle come to work.

92.     United Salt, therefore, interfered with Ms. Pickle's federally protected ADA rights to request the accommodation of leave by insisting that Ms. Pickle return to work immediately after Ms. Pickle requested the accommodation.

93.     As a direct and proximate result of United Salt's actions, Ms. Pickle has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

94.     At all times material hereto, United Salt engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Pickle so as to support an award of punitive damages.

95.     The above-described acts by United Salt constitute interference in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101, *et seq*. and the ADA Amendments Act of 2008.

### COUNT V: VIRGINIA HUMAN RIGHTS ACT SEX HARASSMENT/HOSTILE WORK ENVIRONMENT/GENDER DISCRIMINATION[1]

96.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

97.     Pursuant to Virginia Code § 2.2-3905(B), "It is an unlawful discriminatory practice for: (1) An employer to: a. Fail or refuse to hire, discharge, or otherwise discriminate

---

[1] Ms. Pickle has included this count only to set forth what she plans to assert upon receipt of the Notice of Right to Sue, which is anticipated in short order. Upon receipt of the Notice of Right to Sue, Ms. Pickle will amend the Complaint to add Counts V and VI, setting forth the date upon which the Notice of Right to Sue was received.  While it is not a preferred practice to amend the Complaint, Ms. Pickle was required to file this Complaint prior to receiving the aforementioned Notice of Right to Sue due to the statute of limitations/preserving Counts I through IV. Plaintiff agrees that Defendants do not need to file responsive pleadings to Count V until the Complaint is amended.

17

against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's … sex…; or b. Limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect an individual's status as an employee, because of such individual's … sex…"

98.     Defendants had a duty to maintain a work environment free of sex discrimination and harassment.

99.     Defendants' actions and inactions created a hostile an offensive work environment to Plaintiff and other female employees that interfered with Plaintiff's work.

100.     Defendants knew or should have known of the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment.

101.     Defendants further discriminated against Plaintiff in violation of state law in that Defendants discriminated by paying her less based on her gender in violation of Virginia Code § 2.2-3905.

102.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

103.     At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the protected rights of Plaintiff so as to support an award of punitive damages.

104.     The above-described acts of Defendants constitute sex harassment, hostile work environment, and discrimination, all in violation of Virginia Code § 2.2-3905.

105.   Pursuant to Virginia Code § 2.2-3908, "the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs and may grant as relief any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice, or order such affirmative action as may be appropriate."

## COUNT VI: VIRGINIA HUMAN RIGHTS ACT RETALIATION/RETALIATORY HOSTILE WORK ENVIRONMENT[2]

106.   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

107.   Pursuant to Virginia Code § 2.2-3905(B), "It is an unlawful discriminatory practice for: … (7)(i) An employer to discriminate against any employee … because such individual has opposed any practice made an unlawful discriminatory practice by this chapter …."

108.   Defendants had a duty to maintain a work environment free of retaliatory harassment.

109.   Defendants' actions and inactions created a retaliatory hostile and offensive work environment, ultimately resulting in Plaintiff being constructively suspended from the workplace

---

[2] Ms. Pickle has included this count only to set forth what she plans to assert upon receipt of the Notice of Right to Sue, which is anticipated in short order. Upon receipt of the Notice of Right to Sue, Ms. Pickle will amend the Complaint to add Counts V and VI, setting forth the date upon which the Notice of Right to Sue was received.  While it is not a preferred practice to amend the Complaint, Ms. Pickle was required to file this Complaint prior to receiving the aforementioned Notice of Right to Sue due to the statute of limitations/preserving Counts I through IV. Plaintiff agrees that Defendants do not need to file responsive pleadings to Count VI until the Complaint is amended.

on medical leave.

110.    Defendants knew or should have known of the retaliatory hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment.

111.    Defendants further violated state law when it retaliated against Plaintiff by issuing her an unwarranted disciplinary action, paying her less, and suspending her on the basis of her complaints of sex discrimination, retaliation, and harassment in violation of the Virginia Human Rights Act.

112.    As a direct and proximate result of Defendants' actions, Ms. Pickle has suffered and will continue to suffer pecuniary loss, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

113.    Defendants acted willfully toward Plaintiff with actual malice or with reckless disregard of the protected rights of Plaintiff so as to support an award of punitive damages.

114.    Pursuant to Virginia Code § 2.2-3908, "the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs and may grant as relief any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice, or order such affirmative action as may be appropriate."

WHEREFORE, Plaintiff Mitzi Smith Pickle prays for judgment against Defendants United Salt Saltville, LLC, United Salt Corporation, Texas United Management Corporation, and USC Saltville Brine, LLC, formerly known as Texas Brine Company Saltville, LLC, jointly and severally, and for equitable relief, injunctive relief, lost wages and benefits, front wages

and benefits, compensatory damages, punitive damages, together with prejudgment, post judgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

MITZI SMITH PICKLE

/s/ Brittany M. Haddox_____
Brittany M. Haddox, Esq. (VSB # 86416)
STRELKA EMPLOYMENT LAW
*Counsel for Plaintiff*

Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB # 65766)
Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
Telephone: (540) 283-0802
brittany@strelkalaw.com
monica@strelkalaw.com
thomas@strelkalaw.com
leigh@strelkalaw.com