IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

August 14, 2024

LAURA A. AUSTIN, CLERK
BY:  s/ FELICIA CLARK
        DEPUTY CLERK

| | | |
|---|---|---|
| **MITZI SMITH PICKLE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23CV00030 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **UNITED SALT SALTVILLE, LLC,** | ) | JUDGE JAMES P. JONES |
| **ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

*Argued: Brittany M. Haddox, VIRGINIA EMPLOYMENT LAW, Roanoke, Virginia, for Plaintiff; Harrison E. Richards and Paul G. Klockenbrink, GENTRY LOCKE, Roanoke, Virginia, for Defendants.*

Plaintiff Mitzi Smith Pickle brings this action against her employer, United Salt Saltville, LLC (United Salt Saltville), as well as its related corporate entities, United Salt Corporation, Texas United Management Corporation, and USC Saltville Brine, LLC (Saltville Brine). She asserts claims for sexual harassment, hostile work environment, disparate treatment gender discrimination, retaliation, and retaliatory hostile work environment in violation of Title VII of the Civil Rights Act and the Virginia Human Rights Act (VHRA).[1] The defendants have filed a motion for summary judgment. The motion has been briefed and orally argued and is now ripe

---

[1] The Amended Complaint also included claims under the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) but the plaintiff has now withdrawn those claims.

for decision.  For the following reasons, I will grant the motion in part and deny it in part.

## I. FACTS.

I am required to review the materials submitted by the parties, as well as any materials existing in the record, in order to determine whether the undisputed facts admissible at trial require summary judgment for the defendants as a matter of law. Fed. R. Civ. P. 56.

 Defendant United Salt Saltville manufactures salt products.  As its name implies, its plant and offices are located in Saltville, Virginia, which is within this judicial district.   In 2007, Pickle began working for United Salt Saltville as a laboratory technician.  During the course of her employment, which spanned over 15 years, Pickle held the roles of plant sanitarian and senior laboratory technician, and she assisted with document control.  Pickle contends that the Saltville plant employed very few women, and that female employees were sexually harassed and treated less favorably.

Pickle recounts several incidents that happened while former plant manager Ernie Sands oversaw the Saltville plant.  During a managers' meeting, Sands passed around his cell phone to show a photograph of himself and then assistant plant manager Chris Crawford dressed in penis costumes.  Sands insisted that the photo be shown to Pickle.  Sands and Crawford also compared Pickle's buttocks to that of

another female employee, Brandi Hunter, while Pickle and Hunter were present. Lastly, Sands told Crawford, in front of Pickle and Hunter, that children visiting his house had found a dildo and a condom he and his wife were saving for a special occasion.

Pickle contends that the work environment at the Saltville plant became increasingly hostile since Crawford was promoted to plant manager in July 2021. In late 2021, Pickle, Crawford, and two male managers went to a pharmacy for COVID-19 vaccinations. At the pharmacy, Crawford pickled up a tube of cream used to treat vaginal yeast infections and said, "Mitzi, I think you need this." Compl. ¶ 32, ECF No. 1. He also told the pharmacist, "Mitzi needs a double dose of penicillin." *Id.* In January 2022, Pickle came down with a fever and other symptoms of COVID-19. She states that Crawford refused to let her work from home, and he emailed the president of United Salt Corporation to compel her to come to the office, even though male employees were allowed to work from home when they were sick. In August 2022, Pickle was blamed for a mistake on a document that she had not worked on. Despite learning that Pickle had not made the mistake, Crawford disciplined Pickle and sent her home without pay for one day. Pickle reported the disciplinary action to the defendants' corporate office. Lastly, in October 2022, Pickle received a raise of 2.9%, the lowest in her department. She states that male employees received raises ranging between 3.5% to 3.7% and that two female

employees received raises of 3.3%. Pickle alleges that women at United Salt Saltville have received lower raises than male employees since at least 2020 until Pickle filed a complaint with the Equal Employment Opportunity Commission (EEOC) and Virginia Office of Civil Rights.

Pickle also describes comments made by production manager Steven Lewis. Lewis asked Pickle if she had had a "boob job" and referred to her as a whore. *Id.* ¶ 41. While in Pickle's presence, Lewis told two male employees of defendant Saltville Brine, "Come on in, boys. I thought she would have her clothes off and we would have a foursome." *Id.* ¶ 39. On a different occasion, Lewis was speaking with Pickle about another employee's girlfriend. Lewis stated, "If I had what you women have, I would sell it and make millions." *Id.* ¶ 40. He added that the employee's girlfriend had already "given it to everybody." *Id.* On a separate occasion, a contractor entered Lewis's office while Pickle was inside. Lewis told the contractor to enjoy the scenery and pointed to Pickle. He commented that his office smelled like "ass and boots." *Id.* ¶ 43.

Pickle testifies that she had repeatedly reported the inappropriate conduct to several managers such as then warehouse and shipping manager Bobby Blevins, Saltville Brine project manager Matt Slezak, and maintenance manager Mick Caudill. In response, Pickle was told by these managers, "[T]hey are going to retaliate against you." Br. Opp'n Mot. Summ. J. Ex. 1, Pickle Dep. 115, ECF No.

33-1.  Pickle understood these comments to mean that she would be retaliated against by HR, Crawford, and Sands.  *Id.*  She also reported the inappropriate conduct and her low salary increase to Tom Ellis, the technical manager and manager of quality assurance at the defendants' corporate office in Houston.  According to Pickle, Ellis told her that the defendants would retaliate if she complained to HR and said that she may need to retain a lawyer.

## II.  STANDARD OF REVIEW.

Because Title VII and the VHRA use substantially identical language, I will analyze the plaintiff's Title VII and VHRA claims together.  *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 394 n.4 (W.D. Va. 2023).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the court must view all the evidence in the light most favorable to the opposing party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249.  "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.*
at 249–50 (citations omitted).

### III.  DISCUSSION.

#### A. Disparate Treatment Gender Discrimination.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to
discharge any individual, or otherwise to discriminate against any individual with
respect to his compensation, terms, conditions, or privileges of employment, because
of such individual's race, color, religion, sex, or national origin."  42 U.S.C. §
2000e–2(a)(1).  In order to survive summary judgment on her disparate treatment
gender discrimination claims, Pickle must prove four elements: "(1) membership in
a protected class; (2) satisfactory job performance; (3) adverse employment action;
and (4) different treatment from similarly situated employees outside the protected
class."  *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  The
defendants contest the third and fourth elements.  They argue that Pickle has not
shown an adverse employment action and that she has not identified similarly
situated male employees.

As to the third element, the defendants define an adverse employment action
as "a significant change in employment status, such as hiring, firing, failing to
promote, reassignment with significantly different responsibilities, or a decision
causing a significant change in benefits."  *Washington*, 677 F. Supp. 3d at 396

(citation omitted).  The defendants argue that although Pickle received a raise that was smaller than expected, she benefited from the increase in salary.  In addition, they claim that Pickle has not shown that she was qualified for the plant safety job she alleges she should have received and that the job existed when she applied.

The Supreme Court recently clarified the injury required to make out a Title VII discrimination claim in *Muldrow v. City of St. Louis,* 144 S. Ct. 967 (2024). Plaintiffs do not have to show that the adverse employment action was significant, "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 974.  Thus, all Pickle is required to show is some harm regarding her compensation or an identifiable term, condition, or privilege of employment.

Pickle alleges that discrimination by her employer affected her compensation. In October 2022, she received a raise of 2.9%, the lowest in her department, while male employees at the Saltville plant received raises ranging between 3.5% to 3.7%. Pickle also states facts that implicate the terms and conditions of her employment. "The terms or conditions phrase . . . is not used in the narrow contractual sense; it covers more than the economic or tangible." *Id.* (internal quotation marks, citations, and alterations omitted).  She alleges that she was sent to complete a safety training class in Texas in order to prepare her for a plant safety position.  After completing the course, Sands, who was the plant manager at the time, informed Pickle that she

would not receive the title.  The position was later given to Frye, a male employee. A reasonable jury could find that Pickle suffered adverse employment actions. However, Pickle must show all four elements to establish a Title VII discrimination claim.

The fourth element requires that Pickle received treatment different from similarly situated employees outside the protected class.  When comparing different employees for Title VII purposes, "[a plaintiff] must establish that these other employees are similarly situated in all material respects." *Kilgore v. Va. Dep't of Transp.*, No. 2:12-CV-00015, 2013 WL 718882, at *3 (W.D. Va. Feb. 27, 2013) (citation omitted).  The similarly situated "employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citation omitted).

The defendants argue that Pickle has not identified a male employee who is a comparator in all relevant respects to her.  In response, Pickle argues that she received a lower raise than male employees at the Saltville plant and claims that Frye was hired for a plant safety manager position over her.  However, because Pickle has failed to provide admissible evidence to support the fourth element, summary

judgment will be entered in favor of the defendants as to disparate treatment gender discrimination claims.

### B. Hostile Work Environment.

A Title VII claim can arise from sex discrimination that has created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To demonstrate a prima facie case of a hostile work environment based on gender, a plaintiff must show that the offending conduct was (1) unwelcome, (2) because of her sex, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) imputable to her employer. *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011). The defendants argue that Pickle has failed to show the second, third, and fourth elements.

First, the defendants argue that many of the incidents identified by Pickle are sex- or gender-neutral and therefore the offending conduct was not because of her sex. For instance, they state that the "smells like ass and boots" comment, Sands' picture of the penis costumes, and Sands' story about the dildo and condom, are gender neutral. The defendants also claim that Pickle was not disciplined or forced to work from the office while sick because of her sex. They argue that the incidents "are devoid of sex-specific terms targeting the female sex rather than Plaintiff individually." Mem. Supp. Mot. Summ. J. 17–18, ECF No. 31.

I disagree.  Statutory violations of Title VII do not require sex-specific taunts, as argued by the defendants.  *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003).  The plaintiff's evidence produces an issue of fact as to whether vulgar comments and sexual imagery were aimed at Pickle because of her sex in order to "make her uncomfortable and self-conscious" as one of the few female employees at the Saltville plant.  *Id.* at 332.

Second, the defendants assert that Pickle has not shown that the offending conduct was sufficiently severe or pervasive.  They argue that Pickle has only presented nine unrelated incidents of rude comments and teasing as evidence.  The test for severe or pervasive conduct has both subjective and objective components. It requires a plaintiff to establish that "she perceived — and that a reasonable person would perceive — the environment to be abusive or hostile."  *Amaré v. Lazer Spot, Inc.*, No. 5:22-CV-00005, 2024 WL 2092983, at *5 (W.D. Va. May 9, 2024) (citation omitted).  I must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  There is evidence that Pickle perceived the Saltville plant as a hostile work environment, satisfying the subjective element.  Her coworker commented that Pickle frequently complained because she "felt like she

was being treated unfair [sic] because we were women."  Mem. Supp. Mot. Summ.

J. Ex. 6, Hunter Dep. 55, ECF No. 31-6.  She told Joe Pribyl, the director of HR, that

plant manager Sands was very biased against her because she was a woman.  Pickle

Dep. 56–57, ECF No. 33-1.  I find that the conduct at issue in this case is enough to

raise a jury question as to whether her workplace environment was objectively

hostile or abusive.  For instance, comments about Pickle's appearance or her needing

a "vaginal yeast cream" were made in the presence of others, presumably to

humiliate her.  A reasonable jury could also find that sexual violence was implicated

when the production manager told two male employees, "Come on in, boys. I

thought she . . . would have her clothes off and we would have a foursome."

Turning to the fourth element, I must decide whether the conduct described

by Pickle was imputable to her employer.  An employer is liable for harassment by

Pickle's coworkers only "if it knew or should have known about the harassment and

failed to take effective action to stop it."  *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d

306, 319 (4th Cir. 2008) (citations omitted).  The defendants first state that they are

not liable for a hostile work environment since they took proper actions to prevent

sexual harassment, such as harassment trainings and placing a poster at the Saltville

plant that explained the defendants' sexual harassment policy and directing

employees to contact HR with complaints.  To escape liability, an employer must

show that it took effective action to stop the hostile work environment by responding

with "remedial action 'reasonably calculated to end the harassment.'" *Id.* (citations omitted).  In assessing an employer's action, courts look to "the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective." *EEOC v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011).  Title VII only requires the employer to "take steps reasonably likely to stop the harassment." *Id.* at 674 (internal quotation marks and citation omitted).

The facts do not establish beyond dispute that the defendants took action reasonably calculated to end the harassment.  When the harassment is serious, as it is alleged in this case, merely conducting trainings and placing posters at the workplace are not sufficient.

The defendants also claim that Pickle reported the harassment to powerless managers.  However, Pickle states that she reported the harassment to warehouse and shipping manager Bobby Blevins, project manager Matt Slezak, maintenance manager Mick Caudill, and Tom Ellis, the technical manager and manager of quality assurance at the defendants' corporate office.  A reasonable jury could find that the defendants had knowledge of the harassment.

Because there are genuine disputes of fact, summary judgment is denied as to Pickle's hostile work environment claim.

C. Retaliation.

Title VII bars retaliation against an employee that has opposed a practice forbidden by Title VII or has made a charge, testified, assisted, or participated in Title VII enforcement proceedings.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, a plaintiff "must show (1) that she engaged in protected activity; (2) that her employer took an adverse action against her; and (3) that a causal connection existed between the adverse activity and the protected action." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 578 (4th Cir. 2015) (citation and alterations omitted).  The defendants argue that Pickle has failed to show any of the required elements.

First, the defendants claim that Pickle did not have an objectively reasonable belief that a Title VII violation occurred and therefore she did not engage in a protected activity.  They state that no reasonable person would have believed that the conduct that occurred at the Saltville plant constituted discrimination or harassment.  *See Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 719 (4th Cir. 2024) ("[O]nly when an employee has an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress is the employee's [opposition] conduct protected." (citation omitted)).  Viewed in the light most favorable to the plaintiff, Pickle's belief that she was being harassed and discriminated against could be viewed by a jury as objectively reasonable.  And

Pickle opposed the conduct by reporting it to supervisors and complaining to coworkers, going so far as to report her lower raise to the EEOC and Virginia Office of Human Rights.

The defendants also argue that they did not take adverse action against Pickle. To prove an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). Importantly, in the retaliation context, the Supreme Court has defined "materially adverse" as causing "significant" harm. *Muldrow*, 144 S. Ct. at 976. I find that a jury could find sufficient evidence of an adverse action taken against Pickle by her employers. Pickle alleges that she was warned against reporting offensive conduct to HR by Blevins and Slezak. She also points to Crawford's refusal to let her work from home, the discipline she received for an error on a reporting document, and her lower-than-expected raise as evidence.

Lastly, the defendants contend that there is no causal nexus between Pickle's alleged protected activity and the alleged retaliation. They argue that Pickle cannot link her complaints to her lower-than-expected raise and being passed over for a promotion. The defendants also claim that Pickle was promoted to a senior laboratory technician position around the time she was not given the plant safety job.

-14-

In response, Pickle points to a deposition of former plant manager Sands where he states that she performed her job acceptably. Br. Opp'n Mot. Summ. J. Ex. 11, Sands Dep. 20–21, ECF No. 33-11. She also attaches raises she received in previous years in which her performance was praised. *Id.* at Ex. 41.

At argument, the defendants noted that Pickle was required to show that a decisionmaker in charge of raises or promotions knew about her protected activity. "Fourth Circuit precedent addressing the causation prong of a prima facie case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 125 (4th Cir. 2021). I find that there is sufficient evidence showing that decisionmakers could have had actual knowledge and gave Pickle a lower raise in retaliation for her complaints. Both parties agree that Pickle complained frequently at work and reported harassment and discrimination to four members of management, Bobby Blevins, Matt Slezak, Mick Caudill, and Tom Ellis. In plant manager Crawford's deposition, he states that supervisors decide pay raises for employees at the Saltville plant, but that he is sometimes asked for his opinion. Br. Opp'n Mot. Summ. J. Ex. 6, Crawford Dep. 12, ECF No. 33-6. He also admits that he had a role in Pickle's last pay raise, which she alleges was lower than expected. *Id.* at 13. In an email Crawford sent to payroll and Frye regarding raises for Pickle and Hunter, he wrote, "Both of these has [sic] been sent in but after a talk

with Kyle we need to dropped [sic] their percentage to three percent." *Id.* at 46. Because there is a genuine dispute of fact about whether Pickle received a lower raise in retaliation for protected activity, I will deny summary judgment on the plaintiff's retaliation claim.

## IV.  CONCLUSION.

It is contended that Mitzi Pickle was merely the object of "playful banter" who herself "had a mouth like a sailor" and gave as well as she got.  Mem. Supp. Mot. Summ. J. 4, ECF No. 31.  That may be true and it may be equally true that any adverse job actions she suffered were her own fault and not because of her complaints about her fellow employees' conduct.  However, I find that the truth of those issues and other relevant matters in dispute must be decided by a jury, as the Constitution provides.  U.S. Const. amend. VII.

Accordingly, for the foregoing reasons, it is **ORDERED** as follows:

1. The defendants' Motion for Summary Judgment, ECF No. 30, is GRANTED in part and DENIED in part;

2. The Motion for Summary Judgment is GRANTED as to the disparate treatment gender discrimination claims;

3. The Motion for Summary Judgment is DENIED as to the sex harassment/hostile work environment and retaliation/retaliatory hostile work environment claims; and

4.   The plaintiff's claims under the FMLA and ADA (Counts III and IV) are

withdrawn and dismissed.


ENTER:   August 14, 2024

/s/  JAMES P. JONES
Senior United States District Judge